UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALEXANDER H. HYATT

                    Plaintiff,              **MEMORANDUM IN SUPPORT**

  -against-                                   20-CV-05037 (KAM)
                                           20-CV-05159 (KAM)
WILMINGTON SAVINGS FUND SOCIETY;      21-CV-00619 (KAM)
SELENE FINANCE, LP.; INTERNAL             21-CV-01041 (KAM)
REVENUE SERVICE; and ROBERT J. MUSSO;

                    Defendants.
-----------------------------------------------------------X

      I, Alexander H. Hyatt, Plaintiff, pro se hereby submit my Memorandum in Support of the relief being requested herein.

**Appellees' Claim That Appellant's Motion is Procedurally Flawed**

      In support of Appellees' claim that Appellant's instant Motion for a Stay pending Appeal should have first been brought to the Bankruptcy Court, it relied upon Bankruptcy Rules 8005 and/or 8007.

      In Appellant's view of said Rules, neither Rule forbids a direct Motion to the District Court or Bankruptcy Appellate Panel (BAP), but merely states the criteria for doing so.

      Rule 8005 states in relevant part, "*A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.*"

      Rule 8007 states in relevant part: " *(b) Motion in the District Court, the BAP, or the Court of Appeals on Direct Appeal.*

      *(1) Request for Relief. A motion for the relief specified in subdivision (a)(1)—or to*

*vacate or modify a bankruptcy court's order granting such relief—may be made in the court where the appeal is pending.*

*(2) Showing or Statement Required. The motion must:*

*(A) show that moving first in the bankruptcy court would be impracticable;..."*

In essence, it is Appellant's understanding of the foregoing Rules that the Rules do not forbid a direct Motion to the Appellate court or tribunal, but the Movant must explain the reasons for not filing said Motion with the Bankruptcy court first.

Based on the foregoing, Appellant believes I had the right to file the instant Motion directly to the District Court for the following reasons:

A. The bankruptcy court was clear that no such Stay would be granted by the court concerning the decisions to dismiss the Adversary Complaints filed by Appellant. (See: IRS R., Document 2, Pg. 57, lines 13-15).

B. Based on the foregoing, it would have been a waste of time to file a Motion for a stay which would have been moot on delivery.

**Appellees' Claim that Appellant Did Not Meet The Legal Standard For a Stay**

According to the criteria outlined by the Appellees, the legal standard that must be met to obtain a stay are as follows:

(1) whether the movant will suffer irreparable injury absent a stay

(2) whether a party will suffer substantial injury if a stay is issued,

(3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and

(4) the public interests that may be affected.

With respect to whether or not movant would suffer irreparable injury without a stay, I

would think that the loss of my home would serve as irreparable injury to me. Especially under the circumstances that exist in this matter, where Wilmington and Selene created and submitted obvious fraudulent documentation into various courts and the public records of this State. (See: Wilmington, R., Document 7, Ppg. 41-45; Ppg. 60-63)

Concerning the criterion of whether or not Appellees would suffer substantial injury, with respect to Wilmington and Selene, any party who submits obviously fraudulent documents into a court proceeding should not get the benefit of its fraud, even though a court somehow sanctioned such fraud.

As stated in my Motion, Appellees Wilmington and Selene submitted an U.C.C. Addendum in the official public records of New York State which claimed that it was successor to Greater New York Savings Bank ("Greater New York"), which made it look as if Greater New York had somehow sanctioned or approved said filing when it had been out of business for over 18 years at the time of said filing.

In addition to the foregoing, Appellees Wilmington and Selene submitted an allonge of dubious provenance which claimed that it was executed by Selene as, "Attorney in Fact" for Astoria Savings Bank. However, no such evidence or documentation has ever been presented by Appellees showing that any such relationship ever existed.

Additionally, the law which governs the right to file any UCC addendum, which changes the secured party, must be based on an assignment of the instrument from which said status derives.

Article 9 of the U.C.C., specifically 9-514, mandates that a party must have been assigned the underlying obligation before it can file any such Addendum.

More to the point, Wilmington and Selene can hardly be deemed to be subject to

substantial injury under any circumstances when it is claiming about $30,000.00 is due, which includes mostly fees and other additions to the principal, on a cooperative apartment worth at least 4 times as much. The investors to the Trust will not be harmed by any delay while the Appeal is adjudicated.

With respect to the Internal Revenue Service (IRS), it is my understanding, based on information and belief, that the IRS claim is related to 7 tax years. Those are 2003 through 2005, 2012, and 2016 through 2019. The amount of these claims total $163, 149.31. As stated previously, the vast majority of which is interest and penalties.

Since it was clearly acknowledged by the court in ruling on my Adversary Complaint against the IRS that "***The gravamen of the plaintiff's complaint is that the IRS's proof of claim lacks statutory and regulatory authority***." (See: IRS R., Document 2, Pg. 41, lines 14-15). However, as the decision dismissing said Adversary Complaint failed to reach any analysis or discussion of whether or not the IRS has the authority to impose said penalties and interest under the applicable factual setting, one is left without a basis in law to determine the correct amount Appellant may owe to the IRS. This fact must await the adjudication of the Appeal.

Therefore, under these circumstances, the IRS would be hard-pressed to argue that it would sustain substantial injury if it prevails in the Appeal, as it would be able to add additional interest to its total.

Based on the foregoing, neither Wilmington & Selene, nor the IRS can say they would suffer substantial injury if this court would grant Appellant a stay.

**Whether the Movant Has Demonstrated a Substantial Possibility, Although less than a Likelihood, of Success on Appeal**

Appellant interprets this criterion to mean; whether the Appellant has a reasonable factual

basis as to why I could prevail in this Appeal? From my perspective the answer is 'Yes'.

As stated previously, concerning Wilmington and Selene, once the easily ascertainable evidence (or lack thereof) is explored, it should be quite easy to determine that said Appellees acted without proper authorization to present itself as secured party with respect to the subject coop shares.

Of course, if Appellees are acting in good faith, they could easily resolve this controversy by presenting the original Promissory Note for inspection. Without any such evidence supporting its actions, the fraud is clear.

With respect to Appellee Internal Revenue Service, the issue is quite clear to Appellant as well. I have merely followed what the law states, along with the context provided by relevant court rulings.

The IRS has failed to rebut the judicial ruling relied upon by me in support of my analysis. The courts have been clear that the law says what it means and means what it says. One should not look to speculate concerning the understanding of the tax law.

In its Motion to Dismiss my challenge to its Proof of Claim, the IRS could not rebut the clear language of the law concerning the collection and payment of the tax imposed on wages, so it decided to provide a speculative theory that despite the clear and unequivocal language of the specific requirements to collect the tax contained in subtitle C of the tax law, it could seek to collect said tax directly from me. However, Appellee failed to provide any logical statutory scheme, supported by regulations, which would tend to prove its theory. Not to mention not a single court case that has made a similar decision.

It is not my intention to argue my appeal in this Motion, but to simply outline the fertile areas where Appellant could conceivably prevail. One can compare the information contained in

my AP and Opposition to Appellee's Motion to Dismiss to confirm the positions expressed by Appellant herein.

Based on the foregoing, Appellant believes I have met the standard for showing potential areas where Appellant could prevail on the Appeal.

In regards to the criterion related to the public interest being effected. Appellant believes that any time the issue of taxes is involved, the public interest is involved. Especially when the issue of regulations and the their requirements are being clarified, the public is necessarily effected. As stated previously, where the rights and duties of the People and the Government are concerned it is obvious that such issues go directly to the public interest.

Not all aspects of this Bankruptcy case go to the public interest, however, the full adjudication of all issues presented by this case could potentially have an impact far beyond the the Appellant.

**Miscellaneous Issues**

Although not necessarily germane to the actual adjudication of the instant Motion, Appellant feels compelled to address the unfortunate attempt by the IRS to distort the issues presented in this matter by the use of the term "frivolous".

The IRS appears to be trying to suggest that the decision by the bankruptcy court in granting its Motion to Dismiss was due to the fact that Appellant's position was deemed frivolous. One would need only to read the transcript of the decision, which was read into the record, to rebut such a characterization.

The decision in question was largely decided on the principle of exclusion, where the court stated that issues related to the bankruptcy estate could not be entertained, and sovereign immunity.

The actual thrust of the decision to dismiss, in Appellant's opinion, was due to the courts agreement with the IRS' alternative collection theory (discussed above), which is without logical or judicial support.

The only area where the court used the term frivolous was in relation to Appellant's reference to the Thirteenth Amendment. The application of which, and context of the argument, was totally misapprehended by the court.

With respect to Appellant's reference to the Thirteenth Amendment:

I. Appellant never stated that I have/had rights under the 13th Amendment

II. Appellant never stated that any supposed rights thereunder were violated

III. Appellant never stated that the tax law is in violation of the 13th Amendment

IV. Appellant never stated that the taxing system violated the U.S. Constitution

Ironically, what Appellant was attempting to do was to put the taxing system in its proper perspective and context by showing its true nature.

The term frivolous is a very strong word which means sheer nonsense, not based on a good faith misunderstanding of the law. When one merely quotes the law, as it reads, and provides a clear basis for how one is analyzing said law, the use of the term frivolous, without a showing of how a reasonable person could draw such a conclusion, is off-putting and in bad faith.

In tax law, which is notorious for being complicated, disputes should be resolved in such a way that the party in error should be made aware of the error.

This did not happen in the instances of my tax court cases. I sent correspondences in response to IRS letters explaining my position which were never rebutted. I had Administrative Hearings where rulings were made in an arbitrary manner, leaving me with no other option but to

petition the tax court, to only then have my position distorted and to be fined and sanctioned for wasting the court's time. All the while without any cogent explanation or showing of where my analysis was in error.

These tactics are more akin to what one would expect in the old Soviet Union.

The point I'm trying to make is that I have not come to my understanding lightly, but with much research and deliberation. Justice should have the form of Justice.

There is nothing frivolous about my position. I welcome a comprehensive and reasoned rebuttal showing where I am in error and I will comport my actions accordingly.

## CONCLUSION

The Appellant has demonstrated numerous areas of doubt that should mitigate against the Appellees being able to move on the lower court's ruling until this matter has been through the appeal process.

Appellant also believes that all criteria have been met to ensure that no immanent damage is done to me nor any potential damage to Appellees.

There are many areas left untouched by the bankruptcy court decisions dismissing Appellant's Adversary Complaints.

To deny a stay under these circumstances would be grossly unfair to Appellant.

Appellant believes that if any case deserves the protections of a stay, it is this one.

Based upon the foregoing and Record on Appeal in this matter, Appellant prays that the relief requested in the instant Motion be granted, in the interest of justice.